# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

JAMMIE E. LOECKLE,

    Plaintiff,

vs.

ANDREW M. SAUL, Commissioner of
Social Security,

    Defendant.

No. C19-3031-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

## I.  INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge. *See* Doc. No. 17. Judge Mahoney recommends that I affirm the decision by the Commissioner of Social Security (the Commissioner) denying Jammie E. Loeckle's applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. § 401 et seq., and supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Loeckle has filed timely objections (Doc. No. 18). The Commissioner has not filed a response.

## II.  APPLICABLE STANDARDS
### A.  *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept

as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely

2

because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

**B.     Review of Report and Recommendation**

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court.  A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).  Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard.  *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error").  As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge

to review an issue *de novo* if no objections are filed, it does not preclude
further review by the district judge, sua sponte or at the request of a party,
under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III.    THE R&R

Loeckle has an inherited bone disease that has caused him back pain since he was
a child.  Doc. No. 17 at 1 (citing AR 36-37).  He performed full time work from 2008
to 2011.  *Id.* at 2 (citing AR 283).  He then had back surgery performed by neurosurgeon
Dr. David Beck.  *Id.* (citing AR 398, 400).  After persistent back pain and the
development of right leg pain, Dr. Beck determined Loeckle needed an additional
surgery.  *Id.* (citing AR 402-04).  Due to insurance coverage issues, Loeckle did not
immediately have the surgery and returned to work with lifting restrictions.  *Id.* (citing
AR 406-08).  Loeckle's pain continued and Dr. Beck obtained insurance approval.  He
performed Loeckle's second back surgery on July 12, 2011.  *Id.* (citing AR 657, 659).
Dr. Beck released Loeckle to work with weight-lifting restrictions in mid-September
2011.  *Id.* (citing AR 415).  Loeckle underwent a third surgery in March 2012 after he
continued experiencing pain.  *Id.* (AR 660-61).  He went back to work full time until
March 2013 when he had a brief break in employment.  *Id.* (citing AR 283, 499-500,
645).  He then took on a full-time job in construction as well as a part-time job at a local
gas station.  *Id.* (citing AR 283, 613, 629, 632-33, 641, 645).

Loeckle began mental health treatment in November 2013.  *Id.* at 3 (citing AR
644-46).  He was prescribed two antidepressants and began seeing his provider (Andrew
Stowell, PA) on a regular basis from November 2013 through summer 2014.  *Id.* (citing
592-647).  PA Stowell prescribed various medications to address Loeckle's mental health
issues.  *Id.*  Loeckle continued working his two jobs at this time.  *Id.*

Loeckle began a new full-time job at a Pepsi soda bottling factory in August 2014
and continued working at the gas station on the weekends.  *Id.* (citing AR 283, 487, 589,

4

592).    Loeckle maintained this work schedule from August 2014 to April 2016.    *Id.* (citing AR 283).  He continued to have back pain and right leg pain for which he sought a referral to the Mayo Clinic and received epidural steroid injections, a facet nerve block and a nerve pain stimulator.  *Id.* (citing AR 424-26, 438-45, 486-88, 505).  He also saw Dr. Mark Lassise[1] about once a month to adjust medications related to his mental health symptoms.

On March 3, 2016, Loeckle asked for Dr. Lassise's assistance in obtaining disability benefits.  *Id.* (citing AR 517).  At an appointment a few days later, Dr. Beck encouraged Loeckle to apply for disability and thought it was reasonable for him to get those benefits.  *Id.* (citing AR 490).  Loeckle then put in his two weeks' notice with Pepsi and stopped working there April 6, 2016.  *Id.* (citing AR 61, 283).  He filed the current applications for DIB and SSI on April 8, 2016.  *Id.* at 3-4 (citing AR 77-78).  Loeckle continued working part time at the gas station and later amended his onset date to October 1, 2016, because his gas station earnings rose above the substantial gainful activity level. *Id.* (citing AR 277, 283).

After developing left leg pain in 2016, Loeckle underwent a fourth back surgery in September 2016 upon Dr. Beck's recommendation.  *Id.*  Dr. Beck also removed the spinal stimulator that had been placed during the January 2016 surgery, as Loeckle reported it did not improve his pain.  *Id.* (citing AR 673, 684-89).  After his recovery, Loeckle returned to working at the gas station two to three days a week for seven-and-a-half-hour shifts.  *Id.* (citing AR 65, 273-74, 283).

After Loeckle's disability applications were denied on initial review and reconsideration, he requested a hearing before an administrative law judge (ALJ).  The ALJ found Loeckle was not disabled and that someone with Loeckle's age, education, work experience and residual functional capacity (RFC) could perform work as a

---

[1] Dr. Lassise is in the same office as PA Stowell and took over Loeckle's care to accommodate Loeckle's work schedule.  Doc. No. 17 at 3 (citing AR 589, 592).

document preparer, weight tester and addresser, which were jobs that existed in significant numbers in the national economy. *Id.* at 4-5. Loeckle argues the ALJ erred by not giving sufficient weight to his treating source opinions and by failing to include certain mental limitations in the RFC and hypothetical question. He also argues the ALJ's appointment violates the Appointments Clause of the United States Constitution.

With regard to the treating source opinions, Judge Mahoney determined that the ALJ gave appropriate weight to each. The record contains several opinions from Dr. Beck, dated May 2011, April 2016, August 2016, October and November 2016 and January 2017. *Id.* at 7-8. Judge Mahoney concluded the ALJ gave good reasons supported by substantial evidence in the record as a whole for not giving those opinions controlling weight. *Id.* at 8-10. For instance, she noted the gap in treatment between when Dr. Beck last saw Loeckle, in October 2016, and his January 2017 opinion was supported by the record and that Dr. Beck's opinion that Loeckle could not work due to pain was undermined by Loeckle's work history showing that he was working full-time and part-time jobs despite his pain complaints. *Id.* Judge Mahoney also noted that some aspects of Loeckle's part-time job were inconsistent with Dr. Beck's opined limitations. *Id.* at 10-11.

As for Dr. Lassise's January 2017 opinion addressing Loeckle's mental limitations, Judge Mahoney reasoned that the ALJ's assignment of "some weight" to this opinion was supported by substantial evidence in the record as a whole. *Id.* at 11-12. The ALJ had found that some of Dr. Lassise's answers on the standardized form lacked specificity and some were at odds with Loeckle's work history. *Id.* at 12. Judge Mahoney found that Dr. Lassise's treatment records did not support Loeckle's argument that his mental health declined in the months leading up to his alleged onset date. *Id.* Rather, Dr. Lassise's records reflected consistent complaints and, despite those complaints, Loeckle was able to maintain full-time and part-time employment during the time period he saw Dr. Lassise. *Id.* at 13-14. Judge Mahoney concluded the ALJ's

Case 3:19-cv-03031-LTS-KEM   Document 19   Filed 09/14/20   Page 6 of 23

decision to exclude the majority of Dr. Lassise's limitations from Loeckle's RFC was supported by substantial evidence, including Loeckle's work history.

Judge Mahoney then considered Loeckle's argument that the moderate deficiencies the ALJ found at Step Three were inconsistent with the ALJ's hypothetical to the vocational expert (VE) and corresponding RFC determination. *Id.* at 14. At Step Three, the ALJ found Loeckle moderately limited in the categories of understanding, remembering or applying information; concentrating, persisting or maintaining pace; and interacting with others. *Id.* (citing AR 14-15). The ALJ included the following mental limitations in the RFC and hypothetical to the VE: "a job that could be learned in 30 days or less" and "occasional contact with the public, co-workers, and supervisors." *Id.* (citing AR 16, 70-71).

Judge Mahoney noted that a job that could be learned in 30 days or less correlated to jobs with a specific vocational preparation (SVP) level of one or two and that such work is considered "unskilled." *Id.* at 17. She then compared Loeckle's RFC and the hypothetical question to the VE to those in *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996), which Loeckle relies on. In *Newton*, the claimant had borderline intellectual functioning and often had deficiencies in concentration, persistence or pace. *Id.* at 15 (citing *Newton*, 92 F.3d at 691). The hypothetical to the VE limited him to "simple jobs" and an "inability to perform highly skilled or technical work." *Id.* (citing *Newton*, 92 F.3d at 694-95). The Eighth Circuit concluded these limitations did not sufficiently account for the claimant's moderate limitations in concentration, persistence or pace. *Id.* at 15-16 (citing *Newton*, 92 F.3d at 695).

Judge Mahoney noted that the ALJ in Loeckle's case imposed stricter limitations because he was limited to unskilled work and that the Eighth Circuit has found that a limitation to jobs involving "simple, repetitive, routine" tasks is sufficient to account for moderate limitations in concentration, persistence or pace. *Id.* at 17 (citing *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001)). Judge Mahoney concluded that when considering the descriptions of unskilled work provided in Social Security regulations

7

and policy statements, a limitation of unskilled work was more akin to the limitation of "simple repetitive, routine" tasks upheld in *Howard* than the limitation of "simple work" that is not "highly skilled or technical" that was struck down in *Newton*. *Id.* at 18. Therefore, she recommends finding that the ALJ's Step Three findings of moderate limitations in concentration, persistence or pace and moderate limitations in understanding, remembering or applying information are not inconsistent with the ALJ's RFC determination limiting Loeckle to unskilled work. *Id.* at 18 (citing cases). She noted the evidence in the record also did not support greater mental limitations than those found by the ALJ. *Id.* at 19. She recommends finding the ALJ did not err by failing to include additional limitations in concentration, persistence or pace or in understanding, remembering or applying information in the hypothetical to the VE or RFC determination based on the ALJ's Step Three findings of moderate limitations in these areas.

Next, Judge Mahoney considered Loeckle's argument that the ALJ erred by failing to adopt all limitations included in the state agency psychological consultants' opinions (which she gave significant weight), or by failing to explain why she omitted some limitations from the RFC. *Id.* at 19. In May 2016, Dr. Marziano, a nonexamining state agency psychological consultant, opined that Loeckle had moderate limitations in the following areas: ability to understand, remember and carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; and ability to respond appropriately to changes in the work setting. *Id.* at 19-20 (citing AR 85-86). He concluded Loeckle could follow three-to-four step commands in a sustained manner and that, at times, would have difficulties following detailed instructions, sustaining extended attention/concentration, maintaining pace and handling change. *Id.* at 20. He also opined that Loeckle's variable mood would impact his interactions with others and that he was likely to perform best in a routine environment with limited interactions with

8

the public. *Id.* A second nonexamining state agency psychological consultant affirmed this assessment in October 2016. *Id.* (citing AR 120-23).

Judge Mahoney noted the ALJ gave these opinions "significant weight," finding them "well supported and consistent with other evidence." *Id.* (citing AR 21). She then addressed Loeckle's argument that the state agency consultants' limitation of "difficulties following detailed instructions" limited him to jobs with a reasoning level of one. *Id.* Judge Mahoney disagreed that the consultants' opinions limited Loeckle to performing only Level 1 reasoning jobs, requiring one- or two-step instructions. While they opined Loeckle would have difficulties following detailed instructions at times, they ultimately concluded he could "follow 3-4 step commands in a sustained manner." *Id.* at 21 (citing AR 85-86, 123).

Judge Mahoney did agree, however, that a limitation of performing work with no more than three- to four-step tasks would be inconsistent with Level 3 reasoning jobs. Loeckle notes the ALJ's RFC and hypothetical question to the VE did not include reasoning level limitations and that two of the jobs identified by the VE as work he could perform require Level 3 reasoning. *Id.* at 21-22. He contends the ALJ should have either included a reasoning-level limitation or otherwise explained why such a limitation was not included. *Id.* at 22. Relying on *Gann v. Berryhill*, 864 F.3d 947 (8th Cir. 2017), Judge Mahoney agreed that because the ALJ gave the state agency consultants' opinions significant weight, yet did not adopt all of their limitations or explain why she did not include certain limitations in the RFC, the ALJ had erred. However, she recommends finding this error was harmless because one of the three jobs the VE identified (addresser) requires only a reasoning level of two. Therefore, even if the ALJ had included the reasoning level limitation of Level 1 or 2, one job would remain that Loeckle could perform that exists in significant numbers in the national economy. *Id.* at 23-24.

Finally, Judge Mahoney addressed Loeckle's Appointments Clause challenge by noting that the Eighth Circuit has recently ruled that a Social Security claimant forfeits an Appointments Clause challenge by failing to raise it before the Social Security

9

Administration. *See Davis v. Saul*, 963 F.3d 790 (8th Cir. 2020). Because Loeckle did not challenge the constitutionality of the ALJ's appointment at any point during the administrative proceedings, Judge Mahoney recommends finding that Loeckle forfeited his Appointments Clause challenge. Doc. No. 17 at 24-25.

## IV. DISCUSSION

Loeckle makes the following objections to the R&R:

- The ALJ did not provide good reasons for the weight afforded to the treating psychiatrist and treating surgeon opinions

- The ALJ's RFC determination did not properly account for Loeckle's moderate deficiencies in concentration, persistence and pace

- The ALJ's Step Five denial of benefits is not supported by substantial evidence following *Gann*

Doc. No. 18. He also addresses the Appointments Clause challenge. I will discuss each in turn.

### A. Treating Source Opinions

Loeckle relies on his principal briefing as to this issue. *Id.* at 2. With regard to Dr. Lassise's opinion, Loeckle argues the ALJ failed to explain which limitations were inconsistent with Loeckle's work history. Doc. No. 12 at 4-6. He also argues Dr. Lassise's opinion was supported by the record, particularly based on Loeckle's GAF scores leading up to the relevant period. *Id.*

"[A]n ALJ must give a treating physician's opinion controlling weight if it is well-supported by medical evidence and not inconsistent with the substantial evidence in the record." *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)(2)). When an ALJ gives a treating physician's opinion less than controlling weight, the ALJ must give "good reasons" for the weight assigned and consider the

10

following factors: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; supportability; consistency; specialization and other factors. *See* 20 C.F.R. §§ 404.1527, 416.927.

Here, the ALJ acknowledged that Dr. Lassise has diagnosed Loeckle with bipolar disorder. AR 17. She noted he opined that Loeckle could have only occasional contact with coworkers and the public but documented on multiple occasions that Loeckle was cooperative on interview and that he has worked as a cashier since 2013. *Id.* For this reason, she found Loeckle had a moderate limitation in the area of interacting with others. *Id.* In discussing Loeckle's overall mental health treatment, she acknowledged that he has received treatment since November 2013 and takes prescription medication. *Id.* at 18. She noted he began seeing Dr. Lassise in 2014 and they met numerous times in 2015 and August 2016, during which Dr. Lassise made several adjustments to Loeckle's bipolar medications. *Id.* She then stated the following with regard to Dr. Lassise's opinion specifically:

> In his treating source statement, dated January 2017, Dr. Lassise also indicated that the claimant should only have occasional interaction with co-workers and the public. (Exh. 16F.) He also opined that the claimant would need, on "variable" basis, intense supervision and would occasionally need unscheduled breaks. The physician stated that the claimant would be able to sustain concentration for a "variable" period of time in an average workday, and also would have a "variable" percentage of time in an 8-hour workday in which his work pace would be slow. This assessment is given partial weight as a number of the physician's answers in this standardized form lack specificity and some of the answers are at odds with the claimant's not insignificant work history. However, it is given some weight as it is supported by other evidence in the record that the claimant should be limited in his interactions with the public and only have easily learned jobs.

*Id.* at 21. The ALJ's decision demonstrates she considered the length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; as well as its supportability and consistency. While she did not explicitly

11

mention Dr. Lassise's specialization as a psychiatrist, she did note he was a medical doctor who treated Loeckle's mental health.

The ALJ's reasons for assigning Dr. Lassise's opinion less than controlling weight have been recognized as "good reasons" by the Eighth Circuit. *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) ("a conclusory checkbox form has little evidentiary value when it 'cites no medical evidence, and provides little to no elaboration.'"); *Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009) ("the conclusory statements in Dr. Iverson's letter that Medhaug 'cannot sit for a long period of time without getting up to move around,' and that "it [would be] almost impossible for him to hold a full time job,' were also contradicted by Medhaug's testimony at the administrative hearing that he was currently employed as a school bus driver, working approximately six hours a day, five days a week."). With regard to Loeckle's specific objection that the ALJ did not explain which limitations she found inconsistent with Loeckle's work history, the ALJ implicitly indicated which of Dr. Lassise's limitations she found inconsistent with the record by crediting limitations on his interactions with the public and being limited to easily learned jobs. All other limitations she assigned lesser weight based not only on Loeckle's work history, but also the lack of specificity in Dr. Lassise's assessment. *See* AR 21 (noting that Dr. Lassise responded with "variable" to numerous prompts regarding Loeckle's work-related limitations).

As for consistency with the record, particularly Dr. Lassise's own records containing Loeckle's GAF scores, Judge Mahoney thoroughly addressed this in the R&R and upon my de novo review, I agree with her analysis. *See* Doc. No. 17 at 12-13; AR 450-83, 514-86, 589-91. Dr. Lassise consistently noted GAF scores between 41 to 45 while Loeckle was working two jobs in late 2014 through early 2016, and his reports documented similar symptoms and complaints. The record does not support a significant worsening pattern leading up to Loeckle's disability application. Loeckle does not make any specific objections to Judge Mahoney's analysis. I find the ALJ provided good

reasons supported by substantial evidence in the record as a whole for giving Dr. Lassise's opinion less than controlling weight.

With regard to Dr. Beck's opinions, Loeckle argued that his part-time job was not a good reason to discount these opinions because it was not substantial gainful activity and he had significant accommodations that were consistent with Dr. Beck's limitations. Doc. No. 12 at 7. He argued that inconsistencies with the state agency consultant opinions was also not a good reason to discount Dr. Beck's opinions. *Id.* at 7-8. Finally, he argued that the treatment gap in his records was not a good reason because Loeckle continued picking up medication from Dr. Beck's office every two weeks and was managing as best he could with pain medication during this time. *Id.* at 8-9.

The ALJ discussed Loeckle's history of back pain and the various treating source statements Dr. Beck provided. AR 18-19. She gave little weight to the May 2011 and August 2016 opinions given that Dr. Beck has provided more recent opinions. *Id.* at 19. She also gave little weight to the October and November 2016 opinions because Loeckle was recovering from back surgery during this time. *Id.* She noted the record indicates Dr. Beck last saw Loeckle on October 26, 2016. *Id.* He provided an opinion in January 2017 with the following limitations:

- unable to sit, stand or walk more than 10 minutes at a time
- limited to standing/walking for no more than 2 to 3 hours in an 8-hour workday
- requires a job that permits shifting position every 10 minutes
- could not stoop, kneel, crawl or bend
- could not lift or carry more than 10 pounds at any time

*Id.* The ALJ gave this opinion "partial weight." She noted that the record indicated Dr. Beck had not seen Loeckle for months prior to his assessment. *Id.* She further reasoned:

> The claimant's recent work also indicates that the claimant is more physically capable than the physician opined, and Dr. Beck's opinion is at odds with the opinion of the State Agency medical physicians. The claimant has not been seen by Dr. Beck since October 2016. Further, he has not obtained any health care since January 2017, over one and a half years ago.

> This time period reveals a large gap in the treatment record. Further, the claimant was working at nearly substantial gainful activity levels in 2017.

*Id.* at 19-20. The ALJ's discussion of Dr. Beck's opinions and the medical evidence demonstrates she considered the length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; supportability; consistency and specialization. *See* 20 C.F.R. §§ 404.1527, 416.927.

The ALJ's reasons for assigning Dr. Beck's opinions less than controlling weight have been recognized as "good reasons" by the Eighth Circuit. *See Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (noting the ALJ "may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence . . . ."); *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) ("[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight.") (internal quotation marks and citation omitted); *Donahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) ("Seeking work and working at a job while applying for benefits, are activities inconsistent with complaints of disabling pain."). Having conducted a de novo review, I agree with Judge Mahoney's analysis that substantial evidence in the record supports the reasons provided by the ALJ for giving Dr. Beck's opinions less than full weight. *See* Doc. No. 17 at 7-11. Any objections related to the weight assigned to the treating source opinions are overruled.

**B.     *RFC Determination***

Loeckle relies on his principal briefing as to this issue but specifically objects to Judge Mahoney's analysis that Loeckle's limitation to unskilled work is more restrictive than the skill limitations that were deemed insufficient in *Newton*. Doc. No. 18 at 2 (citing Doc. No. 17 at 17). He notes that an unskilled work classification has an SVP of 2 or less, but that unskilled work does not correspond directly to reasoning levels. *Id.* In other words, an unskilled job could be detailed or complex and require a reasoning

level greater than 1. He argues that regulatory definitions cannot be read into an RFC and that the RFC itself must be reasonably precise. *Id.* at 3. He cites cases from other circuits that have recognized that a hypothetical question including "simple, routine tasks" or "unskilled work" fails to adequately account for deficiencies in concentration, persistence or pace. He acknowledges, however, that the Eighth Circuit has concluded an "ALJ's hypothetical concerning someone who is capable of doing simple, repetitive, routine tasks adequately captures [the claimant's] deficiencies in concentration, persistence or pace." *Id.* (quoting *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001)). Loeckle argues the ALJ's RFC determination and hypothetical question lacked precision given the moderate limitations in concentration, persistence or pace and in understanding, remembering or applying information recognized by the ALJ at Step Three.

The ALJ's RFC and hypothetical question included the following limitations on Loeckle's mental impairments: "he would [be] limited to a job that could be learned in 30 days or less and could have occasional contact with the public, co-workers, and supervisors." AR 16; 70-71. Judge Mahoney distinguished *Newton* because it involved an RFC limitation restricting the claimant's ability "to perform highly skilled or technical work," meaning the claimant could perform all but the highest levels of skilled work (such as semi-skilled work) as long as the work involved simple tasks, which she described as an additional limitation. *See* Doc. No. 17 at 17. Here, the ALJ limited Loeckle to unskilled work (by way of the limitation that the job could be learned in 30 days or less). *Id.* Judge Mahoney thus concluded the unskilled work limitation in this case was more restrictive than the skill limitation found insufficient in *Newton*. *Id.* She acknowledged that while a limitation to "simple jobs" does not sufficiently account for a moderate limitation in concentration, persistence or pace, a limitation to jobs involving "simple, repetitive, routine" tasks does. *Id.* (quoting *Howard*, 255 F.3d at 582). Under the Social Security regulations, Judge Mahoney noted that unskilled work involves "simple duties that can be learned on the job in a short period of time" and requires "little

or no judgment." *Id.* at 17-18 (quoting 20 C.F.R. §§ 404.1568(a), 416.968(a)). Judge Mahoney also cited SSR 85-15, which provides "[t]he basic mental demands of . . . unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine setting." *Id.* at 18 (quoting SSR 85-15, 1983-1991 Soc. Sec. Rep. Serv. 343, 1985 WL 56857, at *4 (Jan. 1, 1985)). Therefore, she reasoned that a limitation to unskilled work appeared more akin to the limitation of "simple, repetitive, routine" tasks upheld in *Howard* than the limitation to "simple work" that is not "highly skilled or technical" that was struck down in *Newton*. *Id.* at 18. Essentially, Judge Mahoney concluded that unskilled work inherently includes moderate limitations related to concentration, persistence or pace, whereas semi-skilled work does not.

To begin, it is important to keep in mind that an ALJ is not required to identify specific limitations related to the paragraph B categories in determining a claimant's RFC. The paragraph B categories are related to Step Three, which involves a different inquiry than at Step Four when an ALJ determines a claimant's RFC. At Step Three, the ALJ is determining whether the claimant's impairments or combination of impairments meets a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. At Step Four, the ALJ is determining the claimant's RFC and whether the claimant can perform his or her past work. As explained in Social Security Ruling 96-8p:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairments at Step 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [psychiatric review technique form].

SSR 96-8P, 1996 WL 374184 (July 2, 1996). This means an RFC need not include specific limitations on concentration, persistence or pace merely because the ALJ concluded at Step Three that the claimant had moderate limitations in a particular area. A claimant's RFC represents "the most [a claimant] can still do *despite* [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (emphasis added). *See also Mangano v. Berryhill*, No. 16-CV-147-KEM, 2017 WL 4322821, at *6 (N.D. Iowa Sept. 28, 2017) (citing cases).

Here, the ALJ at Step Three found Loeckle had moderate limitations in understanding, remembering or applying information; interacting with others; and concentrating, persisting or maintaining pace. AR 14-15. At Step Four, she determined in the RFC that he would be "limited to a job that could be learned in 30 days or less" and "could have occasional contact with the public, co-workers and supervisors." *Id.* at 16. In the discussion of Loeckle's RFC, the ALJ included the same language she used in her Step Three finding with regard to the areas of Loeckle's ability to understand, remember or apply information. *Id.* at 14, 17. She stated in both sections:

> In understanding, remembering, or applying information, the claimant has a moderate limitation. In April 2016, Kylie Zech, as the claimant's girlfriend, filled out a third-party function report and stated that the claimant "has a tendency to forget a few things when given spoken instructions." (Exh. 5E, p. 6.) She also indicated that he could follow simple written instructions pretty well but was less adept at following complicated ones. *Id.* The claimant also completed a function report in April 2016 in which he stated that he did not follow spoken instructions well and he forgets a lot. (Exh. 4E, p. 6.) However, in office visits November 2014 and January 2015, Mark Lassise, M.D., stated that the claimant's "fund of knowledge," insight, concentration, and judgment were all within normal limits. (Exh. 7F, pp. 72, 76.) The evidence demonstrates the claimant can use reason and judgment; follow one or two-step oral instructions to carry out a task; and understand and learn terms, instructions, and procedures. Accordingly, the evidence overall substantiates a moderate, but not marked, limitation in this domain.

*Id.* The ALJ included a work-related or functional limitation for this category by limiting Loeckle to work that could be learned in 30 days or less. *Id.* at 16. The ALJ's discussion of Loeckle's moderate limitations in concentration, persistence and pace were not identical at Steps Three and Four. At Step Three, she stated:

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. He testified that, in one job, the warehouse manager was upset because he was do 98 cases and was supposed to do approximately 200. However, the claimant has shown an ability to work full-time, sometimes with an excessive number of hours. He mentioned to a medical professional in October 2014 that he worked from 11:00 to 7:00 and only got 20-minute breaks. (Exh. 7F, p. 83.) He also had stated in December 2013 that he was working 64 hours seven days a week, and also complained about the number of hours worked in January 2014; the treatment notes indicate that he stated 100 hours. (Exh. 7F, pp. 123, 126.) Accordingly, the evidence substantiates only a moderate limitation in this domain.

AR 15. At Step Four, she stated:

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. The claimant contended that he has limitations in concentrating generally, following instructions, and completing tasks. (Exh. 4E, p. 5.) He testified that, in one job, the warehouse manager was upset because he was do 98 cases and was supposed to do approximately 200. In March 2017, Ms. Zech indicated that the claimant took significant longer than other employees did to put away shipments of merchandise. (Exh. 14E.) However, the claimant has shown an

ability to work full-time, sometimes with an excessive number of hours. He mentioned to a medical professional in October 2014 that he worked 11-7 and only got 20-minute breaks. (Exh. 7F, p. 83.) He also had stated in December 2013 that he was working 64 hours seven days a week and also complained about the number of hours worked in January 2014; the treatment notes indicates that he stated 100 hours. (Exh. 7F, pp. 123, 126.) In addition, the claimant indicated in April 2016 that he is able to drive, prepare meals, watch TV, and manage funds. (Exh. 4E, pp. 3-4.) Accordingly, the evidence substantiates only a moderate limitation in this domain.

*Id.* at 17-18.

This suggests the ALJ did not find a work-related or functional limitation was necessary in the RFC to account for Loeckle's moderate limitations in this area based on his work history and daily activities. She had also mentioned earlier in her decision that Dr. Lassise found his concentration was within normal limits. *Id.* at 17. Because an RFC represents the *most* a claimant can do *despite* his limitations, *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (emphases added), the ALJ did not err by failing to include a specific work-related limitation for concentration, persistence or pace in the RFC or hypothetical question to the VE. While the ALJ could have been more explicit in her findings at Step Four regarding why she chose not to incorporate any functional limitations related to concentration, persistence or pace, it is clear from her decision as a

18

whole that she did not find Loeckle's moderate limitations in this area mandated a functional limitation in the RFC. Because I find the ALJ intended to (and did) exclude a functional limitation for concentration, persistence or pace in the RFC, I need not address whether the hypothetical question to the VE sufficiently accounted for a moderate limitation in concentration, persistence or pace under *Newton*.

## C.   *Step Five Determination*

Loeckle continues to rely on his principal briefing as to this issue, but specifically objects to Judge Mahoney's conclusions that the ALJ's error as to this aspect of her decision was harmless. Doc. No. 18 at 4-5.

Judge Mahoney concluded the ALJ erred by failing to limit Loeckle to Reasoning Level 2 positions, as supported by the state agency consultants' opinions, or by failing to explain why she did not adopt this limitation. *See* Doc. No. 17 at 23. She concluded this was error because the ALJ gave the state agency psychological consultant opinions "significant weight" and they concluded Loeckle was able to follow three to four step commands in a sustained manner. *Id.* at 20. Based on the description of the reasoning levels in the DOT, Appendix C, Judge Mahoney concluded that this limitation was equivalent to performing Reasoning Level 2 jobs. *Id.* at 20-21. She relied on *Gann v. Berryhill*, 864 F.3d 947 (8th Cir. 2017) and my opinions in *Block v. Saul*, No. C18-118-LTS, 2020 WL 1505566, at *6-7 (N.D. Iowa Mar. 30, 2020), and *Burns v. Saul*, No. 18-cv-72-LTS (N.D. Iowa Jan. 10, 2020) (both of which discuss *Gann*), to conclude it was error for the ALJ not to adopt this limitation or explain why it had been omitted. *Id.* at 23. Because one of the three jobs identified by the VE in response to the hypothetical question (addresser) required a reasoning level of two (as opposed to three), Judge Mahoney concluded the error was harmless. *Id.* at 23-24. The VE testified 85,000 positions existed in the national economy for that job. *Id.* at 24.

Loeckle argues the 85,000 estimated positions is too high. Doc. No. 18 at 5. He presents his own research and explains that the Standard Occupational Classification

19

(SOC) code applicable for the addresser position indicates that, as of May 2019, only 47,460 "43-9022 Word Processors and Typists" jobs were available in the national economy. *Id.* He cites *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1283-84 (11th Cir. 2020) as a recent opinion addressing this issue. *Id.* at 6. He also acknowledges this argument was not made in his original briefing. *Id.* n.2.

The Eleventh Circuit explained the issue with DOT codes and SOC codes as follows:

> To obtain a job-numbers estimate, a vocational expert may consult a publication like the DOT. *See* 20 C.F.R. § 416.966(d)(1). The DOT groups jobs into "occupations" based on their similarities and assigns each occupation a code number. Unfortunately, the Department of Labor has not revised the DOT since 1991. Although the DOT is outdated—some would say obsolete—it remains one of the vocational expert's primary tools. *See Chavez*, 895 F.3d at 964–65 (discussing the shortcomings of the DOT and noting an upcoming system that aims to replace it in 2020); *Purdy v. Berryhill*, 887 F.3d 7, 14 n.10 (1st Cir. 2018) (same).

> Aside from being three decades old, the DOT presents other difficulties. DOT codes, for example, do not provide statistical information about the number of jobs available in the national economy. Instead, the vocational expert must look to other sources like the Occupational Employment Quarterly (OEQ), which is compiled by a private organization called U.S. Publishing, to find employment statistics. *See Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014); *Brault v. Soc. Sec. Adm.*, 683 F.3d 443, 446 (2d Cir. 2012). The OEQ database, however, does not compile data by DOT codes, but rather through the Standard Occupational Classification (SOC) system. *See Brault*, 683 F.3d at 446; Occupational Employment Statistics, Bureau of Labor Statistics, https://www.bls.gov/oes/ (last visited April 30, 2020).

> The SOC system groups together detailed occupations with similar job duties. As a result, a single SOC group may contain multiple DOT occupations. *See Herrmann*, 772 F.3d at 1113–14. In the words of the Seventh Circuit, "[t]he use of one system to supply the job titles and another [system] to provide the number of jobs creates a matching problem: a one-to-one correlation does not exist." *Chavez*, 895 F.3d at 965. *See also Brault*, 683 F.3d at 447 n.4 (noting the "information loss" that results from the "many-to-one mapping" between the DOT and SOC codes, and

> explaining that any estimate of existing jobs "may deviate significantly from
> the actual number of existing positions"). To provide some assistance in
> this regard, the Bureau of Labor Statistics has published a crosswalk which
> provides the corresponding SOC group code for each DOT occupation. *See*
> DOT Crosswalk Search, O*NET OnLine,
> https://www.onetonline.org/crosswalk/DOT/ (last visited April 30, 2020).

*Goode*, 966 F.3d at 1281. The error in *Goode* was incorrectly converting the bakery worker DOT code into the wrong SOC group code. *Id.* at 1282.

Here, the VE and ALJ cited DOT No. 209.587-010 for the job of addresser. AR 23, 71. The VE testified that the job of addresser was available for the hypothetical question the ALJ provided and that "approximately 85,000 positions exist nationwide." AR 71. Loeckle argues that when using the DOT crosswalk search for DOT No. 209.587-010 (https://www.onetonline.org/crosswalk/DOT?s=209.587-010&g=Go) the proper SOC code is 43-9022.00 "Word Processors and Typists." The United States Bureau of Labor Statistics then shows there were 47,460 of these jobs in May 2019. *See* https://www.bls.gov/oes/current/oes439022.htm.

While this is an interesting argument, I find I cannot consider it on judicial review. Unlike the claimant in *Goode*, Loeckle did not raise this issue during the administrative hearing. He did not question the VE as to how she reached her numbers. AR 72-74. Without such a record, Loeckle can only speculate that she did not use the proper SOC code. Nothing requires a VE to use the method Loeckle describes. Social Security Ruling 00-4p provides:

> Evidence from VEs or VSs can include information not listed in the DOT.
> The DOT contains information about most, but not all, occupations. The
> DOT's occupational definitions are the result of comprehensive studies of
> how similar jobs are performed in different workplaces. The term
> "occupation," as used in the DOT, refers to the collective description of
> those jobs. Each occupation represents numerous jobs. Information about a
> particular job's requirements or about occupations not listed in the DOT
> may be available in other reliable publications, information obtained
> directly from employers, or from a VE's or VS's experience in job
> placement or career counseling.

SSR 00-4p, 65 Fed. Reg. 75760 (2000).

In any event, the Eighth Circuit has recognized that even fewer than 40,000 jobs in the national economy is "significant" for purposes of supporting an ALJ's Step Five determination. *See Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (concluding that 200 positions in Iowa and 10,000 jobs in the national economy was significant). I agree with Judge Mahoney that any error with regard to the ALJ's failure to include a limitation related to Loeckle's reasoning level or explain the omission of such a limitation is harmless. Loeckle's objections as to this aspect of the ALJ's decision are overruled.

### D.     *Appointments Clause Challenge*

Loeckle notes that a petition for a writ of certiorari has been sought for review of the Eighth Circuit opinions in *Davis v. Saul* and *Hilliard v. Saul*, which recognize that a claimant forfeits an Appointments Clause challenge by failing to raise it in administrative proceedings. Doc. No. 18 at 7-8. He requests that I stay judgment on this issue until the appeals are resolved or that I hold his case in abeyance while the Eighth Circuit examines the issue in a second set of consolidated cases. *See Smith v. Saul*, No. 19-2731 (8th Cir.); *Millard v. Saul*, No. 19-2766 (8th Cir.); *Taylor v. Saul*, No. 19-3155 (8th Cir.).

I decline to stay judgment or hold the case in abeyance. The Eighth Circuit has directly addressed the issue. *See Davis*, 963 F.3d at 795 (concluding the court need not consider an Appointments Clause challenge that was not presented to the agency). Unless *Davis* is overruled, it is binding precedent. Loeckle's objections to the Appointments Clause issue are overruled.

## V.    CONCLUSION

For the reasons set forth herein:

1.    Plaintiff's objections (Doc. No. 18) to the Report and Recommendation (Doc. No. 17) are **overruled**.

2.    I **accept** the Report and Recommendation **without modification, except for my alternative finding related to the ALJ's RFC determination**.  *See* 28 U.S.C. § 636(b)(1).

3.    Pursuant to Judge Mahoney's recommendation:

    a.    The Commissioner's disability determination is **affirmed**; and

    b.    Judgment shall enter against plaintiff and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 14th day of September, 2020.

_____
Leonard T. Strand, Chief Judge